742 So.2d 308 (1999)
LAS OLAS TOWER COMPANY, Petitioner,
v.
CITY OF FORT LAUDERDALE, Respondent.
City of Fort Lauderdale, Petitioner,
v.
Las Olas Tower Company, Respondent.
Elizabeth Buntrock, Steven Berrard, et al., Petitioners,
v.
The City of Fort Lauderdale, a Florida municipal corporation, and the Las Olas Tower Company, Inc., a Delaware corporation authorized to do business in the State of Florida, and Thelma Harris, Robert Arrington, Felice Arrington, Steve Shelton, Diana Shelton, Dane Hancock, Cynthia Hancock, Robert M. Curtis, Marie C. Curtis, Jack O. Demyan, Jean M. Dooley, Gail M. Sullivan, Dorothy Menza, Princess Mace, Elizabeth I. Haboian, Helen F. Atherton, And Marjorie M. Wheeler, Respondents.
Nos. 97-2791, 97-2861 and 97-3209.
District Court of Appeal of Florida, Fourth District.
May 12, 1999.
*309 Thomas F. Gustafson, Jon M. Henning, and Philip E. Rothschild of Gustafson, Tilton, Henning & Metzger, P.A., Fort Lauderdale, for Elizabeth Buntrock, Steven Berrard, et al.
Dennis E. Lyles, City Attorney, and Robert B. Dunckel, Assistant City Attorney, Fort Lauderdale, for City of Fort Lauderdale.
Richard G. Coker, Jr. of Brady & Coker, Fort Lauderdale, and Arthur J. England, Jr., Clifford A. Schulman, and Elliot H. Scherker of Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., Miami, for Las Olas Tower Company, Inc.

ON MOTION FOR REHEARING AND REHEARING EN BANC
PER CURIAM.
The court's opinion in these three cases, consolidated for purposes of opinion, was filed January 6, 1999, 733 So.2d 1034 (Fla. 4th DCA 1999). Timely motion for rehearing and for rehearing en banc was filed in Cases No. 97-2791 and 97-2861 only; thus, the mandate issued in due course in Case No. 97-3209. The court's opinion filed January 6, 1999 is withdrawn as to Cases No. 97-2791 and 97-2861 only, and as to those cases the following revised consolidated opinion, of substantially identical import, is substituted. The motion for rehearing and rehearing en banc is denied.

REVISED CONSOLIDATED OPINION
The three above captioned cases arose out of related zoning issues reviewed by the Circuit Court of Broward County acting in its appellate capacity. Although this revised consolidated opinion applies to Cases No. 97-2791 and 97-2861 only, we have included for purposes of clarity a discussion of the issues in Case No. 97-3209.
In 1995, Las Olas Tower Company ("LOT") applied to the City of Fort Lauderdale for site plan approval for a proposed 45 story residential condominium ("Tower I") to be built in the Central Business District ("CBD"), an overlay zoning district,[1] and for an allocation of additional *310 dwelling units ("density bonus"). The underlying zoning district for the Tower I site is the "R-3" district. Upon the application being denied, LOT petitioned the circuit court for certiorari review of the denial of its Tower I application.[2]
With that suit pending, LOT applied for site plan approval of a 32 story scaled-down version of the residential condominium ("Tower II"). That application was likewise denied. LOT amended its then pending circuit court action to seek review also of the denial of its Tower II application[3].
Ms. Buntrock and others (herein collectively "Buntrock") are resident property owners near LOT's proposed building site whose property would be adversely affected if Tower II were to be built as proposed. While LOT's Tower II application was still under review by the City's planning staff, Buntrock became aware that planning staff would recommend denial of the Tower II site plan for its failure to meet setback requirements of the CBD Zoning. Buntrock appealed to the Board of Adjustment ("BOA") for a ruling that the Planning and Zoning Board ("PZB"), in its consideration of the application, should apply the setback requirements of the underlying R-3 zoning.[4] The BOA upheld the planning staff's interpretation of the setback requirements to be applied, as a result of which Buntrock filed petition for certiorari in the circuit court for review of the BOA decision.
In LOT's suit, the court entered an order that (a) denied certiorari as to Tower I (Counts I and III), based on a finding that LOT was accorded procedural due process, the administrative findings of the City's agencies were supported by competent substantial evidence, and the essential requirements of law were observed; (b) granted certiorari as to Tower II (Count V), upon a finding that procedural due process was afforded and the agencies' findings were supported by substantial competent evidence, but denial of the setback approval was a departure from the essential requirements of law; and (c) reserved jurisdiction as to Counts II, IV, and VI which sought a declaratory judgment that the setback requirements in the CBD Zoning ordinance were void for lack of clear standards and criteria. LOT filed certiorari here (Case No. 97-2791) for review of denial of certiorari on Tower I ("LOT's Petition"). The City of Fort Lauderdale filed certiorari here (Case No. 97-2861) for review of the grant of certiorari on Tower II ("City's Petition").
In Buntrock's separate suit the court entered its order denying certiorari (thereby upholding the BOA's interpretation of the setback requirements) upon a finding that the agency's interpretation was not clearly erroneous and therefore should not be overturned. Buntrock filed certiorari here (Case No. 97-3209) to review that decision ("Buntrock's Petition").
On certiorari review of a circuit court order entered in its appellate capacity, our review is limited to whether procedural due process has been afforded and whether there has been application of the correct law. See Haines City Community Dev. v. Heggs, 658 So.2d 523 (Fla.1995). In each of these cases the respective petitioner asserts only that the court failed to apply the correct law.

BUNTROCK'S PETITION
The R-3 zoning (multifamily residential) provides for a maximum building *311 height of 55 feet, and for definitive setbacks on all sides of a building, subject to a minimum of not less than one-half the height of the building. When the CBD was created in 1970 and codified as section 47-33, City Code, it expressly provided that the maximum height and minimum yard restrictions generally applicable in R-3 zoning "shall not apply" in the CBD. In 1985, section 47-33 was reworded. Although it expressly provided that "... building sites within the central business district shall be exempt from the maximum height restrictions established by the applicable zoning regulations ...,"[5] it no longer contained an express exemption of the minimum yard restrictions except as discussed in the footnote below. In 1986 the CBD regulations were further amended by creating section 47-33.1, entitled "Setbacks." The relevant provisions of section 47-33.1, are as follows:
Setbacks.
(a) Despite the provisions of section 47-33 pertaining to setbacks, there shall be a minimum twelve-foot setback for any structure erected in the central business district, subject to the following requirements:
(1) For purposes of section 47-33.1, the term "setback" means the minimum horizontal distance between a principal structure and each interior curb line, existing as of January 1, 1986 (or if a curb does not exist, the edge of the improved roadway) adjacent to the land on which the structure is to be situated;
(2) The setback shall apply to the first ten (10) feet of the height of the structure;
* * *
(4) The provisions of section 47-59 (Development review requisites) shall apply, despite any provision in this section which is or may appear to be to the contrary.
The setback imposed by this section may be modified by the planning director, subject to the requirements prescribed below.
(b) No structure, or part thereof, shall be erected or used, or land or water used, or any change of use consummated, nor shall any building permit or certificate of occupancy be issued therefor, unless a development plan for such structure or use shall have been reviewed and approved by the planning director and, where applicable, after development review as prescribed by section 47-59. In approving such development plan, the planning director shall consider the location, size, height, design, character and ground floor utilization of any structure or use, including appurtenances, access and circulation for vehicles and pedestrians; streets, open spaces, relationship to adjacent property, proximity to New River and other factors conducive to development and preservation of a high quality central business district. The director shall not approve the setbacks shown on the development plan unless a determination is made that the setbacks conform to all applicable provisions of the zoning ordinances, including the requirements of this section, that the safety and convenience of the public are properly provided for and that adequate protection and separation are provided for contiguous property *312 and other property in the vicinity. The director may condition approval of the setbacks of a development plan by imposing one (1) or more setback requirements exceeding the minimum requirements prescribed by this section.
* * *
(d) Any development plan which provides for erection of a new structure in the central business district,... to be located on land adjacent to New River, ... shall be submitted directly to the planning and zoning board for review of the setbacks. The board shall render its decision after consideration of all factors identified above.
The Tower II application did not seek a density bonus. The City's planning staff reviewed the site plan for setback requirements on the basis of criteria in section 47-33.1. Buntrock sought a ruling from the BOA that the underlying R-3 zoning setback requirements should be the proper standard to be considered by the planning staff. Buntrock's position, simply stated, was that the rewording of section 47-33 in 1985, and the wording of section 47-33.1 in 1986, showed clear legislative intent to no longer exempt residential property in the CBD overlay from the minimum setbacks of the underlying zoning.[6] The City's Planning Director, the City's Planning Staff, and the Zoning Administrator all took the position before the BOA that section 47-33.1(d) was intended to require all proposed projects in the CBD located on New River to be submitted to the PZB for review of all setbacks, applying to such review all the factors found in sections 47.33.1(a) and (b). The BOA upheld the staffs interpretation and Buntrock sought certiorari review in the circuit court.[7] The circuit court, citing Fortune Insurance Co. v. Department of Insurance, 664 So.2d 312 (Fla. 1st DCA 1995), upheld the BOA ruling on the finding that the staffs interpretation and the BOA's affirmance of the same were not clearly erroneous. Our inquiry is whether, in so doing, the circuit court properly applied the correct law.
Generally, a reviewing court should defer to the interpretation given a statute or ordinance by the agency responsible for its administration. See Winemiller v. Feddish, 568 So.2d 483, 485 (Fla. 4th DCA 1990); AMISUB (North Ridge General Hosp., Inc.) v. Department of Health and Rehabilitation Servs., 577 So.2d 648, 649 (Fla. 1st DCA 1991). Of course, that deference is not absolute, and when the agency's construction of a statute amounts to an unreasonable interpretation, or is clearly erroneous, it cannot stand. See Legal Envtl. Assistance Found., Inc. v. Board of County Comm'rs of Brevard County, 642 So.2d 1081, 1083-84 (Fla. 1994); Woodley v. Department of Health and Rehabilitative Servs., 505 So.2d 676, 678 (Fla. 1st DCA 1987); Kearse v. Department of Health and Rehabilitative Servs., 474 So.2d 819, 820 (Fla. 1st DCA 1985).
Was the interpretation which the BOA placed on section 47-33.1 unreasonable or clearly erroneous? We think not. In statutory construction a literal interpretation need not be given the language used when to do so would lead to an unreasonable conclusion or defeat legislative intent or result in a manifest incongruity. See *313 Winemiller, State v. Miller, 468 So.2d 1051, 1053 (Fla. 4th DCA 1985); Ferre v. State ex rel Reno, 478 So.2d 1077 (Fla. 3rd DCA 1985). True, section 47-33.1(a)(1) does state in unambiguous language that, for the purposes of section 47-33.1,[8] the term "setback" means the horizontal distance between a principal structure and the edge of the interior curb of [Sagamore Street, in this case]. But it is apparent to us that such meaning applied literally to the word "setback" (whether in the singular or the plural) as it is used in subsections (b) and (d) would itself be unreasonable and would effectively render those subsections a nullity. By way of example, the entire mechanism created in section 47-33.1(d) for Planning and Zoning Board "review of setbacks" for projects located on New River, directing it to consider the factors set out in 47-33.1(b), would be manifestly incongruous.
The circuit court, sitting in review of the decision of the Board of Adjustment, correctly applied the law in reaching the determination that the BOA had not departed from the essential requirements of the law. Buntrock's petition for certiorari should be and is denied.

LOT'S PETITION
LOT's application for site plan approval of a 45 story residential condominium also sought additional dwelling units over and above the density permitted by the applicable zoning regulations ("density bonus"). To obtain additional units the applicant must first obtain site plan approval from the PZB. Although LOT was denied both the density bonus and site plan approval, the denial of the former becomes immaterial if the denial of the latter is upheld.
LOT argues that the City based denial of site plan approval on aspirational goals delineated in the City's Future Land Use Plan which had not been adopted by ordinance. The circuit court found, however, that the City, in denying approval, had relied on evidence presented by LOT as well as on recommendations of staff and relevant city ordinances, and that the evidence relied upon met the competent, substantial test. That finding, which puts to rest LOT's argument on this issue, is not open for our review.
The circuit court also found that the City properly used the height of the proposed development as a factor in denying LOT's application for site plan approval. LOT particularly challenges the use of height as a criterion, noting that section 47-33(1) exempts central business district buildings from "the maximum height restrictions." However, as the circuit court observed, section 47-33.1(a)(4) explicitly provides that the provisions of section 47-59 shall apply despite any provision found in section 47-33.1 appearing to be to the contrary.[9] Section 47-59 calls for every development project to meet all the criteria outlined therein. Of significance to this point, one of the criterion is that the development be compatible with, and preserve the character of, the adjacent neighborhoods, residential as well as commercial. This requirement of neighborhood compatibility and preservation requires a consideration of several factors, including the scale, mass, location, size and height of the proposed project. The PZB and its staff objected to the height of Tower I because such height was not compatible with the buildings on nearby properties. LOT and the City agree that compatibility is a valid standard for review of site development. See, e.g., City of St. Petersburg v. *314 Cardinal Indus. Dev., 493 So.2d 535 (Fla. 2d DCA 1986). While we note LOT's argument that adherence to a compatibility standard would effectively prohibit the high density development contemplated by the CBD, that argument is one better addressed to the legislative body.
The circuit court, sitting in review of the decision of the City Commission and the City's Planning and Zoning Board, correctly applied the law in reaching the determination that the City and its agency had not departed from the essential requirements of law. LOT's petition for certiorari should be and is denied.

THE CITY'S PETITION
The last question before this court is whether the circuit court correctly applied the law in granting LOT certiorari on Count V, which concerned the PZB's and the City Commission's denial of setback approval for Tower II.
The circuit court agreed with LOT that Tower II met the minimum setback requirements set out in section 47-33.1(a),[10] but also agreed with the City that it has the discretion under section 47-33.1(b) to require more than the minimum setback, or, put another way, to condition approval of setbacks by imposing one or more setback requirements in excess of the minimum. Notwithstanding, the circuit court found that the City had failed to exercise the discretion allowed it under section 47-33.1 before denying LOT's application,[11] and thus held its denial of setback approval for Tower II constituted a departure from the essential requirements of law.
We understand the words of the circuit court to mean that in order for the City to exercise properly the discretion afforded it by the ordinance, the City or its appropriate agency had a duty to inform LOT what setbacks it would find acceptable before LOT went to the trouble of revising plans only to have them rejected. Though that might appear at first blush as not an unreasonable requirement, we think it is neither feasible nor the law.
Section 47-33.1(a) authorizes the planning director to modify setback requirements in specified circumstances. Section 47-33.1(b) states the director may condition approval of setbacks in a development plan by imposing one or more setback requirements in excess of the minimums stated in the section. In accordance with section 47-33.1(d), this became the responsibility of the PZB, rather than the director, in the instant case, because the property is located along the New River.
Whether such responsibility rests with the planning director or, as in this case, with the PZB, the determination of whether to modify setback requirements, or to condition approval of setbacks by imposing requirements in excess of the minimums, cannot be made until the development plan is submitted and the various criteria applicable thereto considered. The criteria to be considered is not discretionary but is legislatively mandated. Discretion is involved, however, in determining whether a particular criterion requires or justifies some modification of the setback. The exercise of that discretion is neither unfettered nor freely subject to whim or caprice, as there is a clear appeal and review process through which abuse of discretion can be overcome.
The issue here, however, is not whether this legislative scheme vesting such discretion *315 is void for lack of objective standards (that issue being still before the circuit court in Counts II and IV and VI over which the court retained jurisdiction), but whether the City had a duty to notify a developer what would be required in order to avoid denial of approval of a development plan. We find no language in the ordinance requiring that such be done. It would appear, however, that in this instance the issue is moot. A member of the City's planning staff did meet with LOT's representative at the proposed site prior to the submission of the site development plan on Tower II and outlined with a reasonable degree of specificity what the developer needed to do in order to obtain site plan approval.
We hold the circuit court failed to apply the correct law in ruling in favor of LOT on Count V. We therefore grant the City's petition for certiorari and quash the circuit court's ruling as it relates to Count V, with directions to deny LOT's petition for certiorari as to that Count.
GRANTED IN PART AND DENIED IN PART.
POLEN, GROSS, JJ., and OWEN, WILLIAM C., Jr., Senior Judge, concur.
NOTES
[1] In overlay districts, where there is a conflict between the provisions of the underlying district and the overlay district, the provisions of the overlay district supersede or override the provisions of the underlying district to the extent of the conflict.
[2] Counts I, II, III, and IV of LOT's petition in the circuit court pertain to Tower I.
[3] Counts V and VI of LOT's amended petition pertain to Tower II.
[4] The practical effect of which would essentially limit Tower II to a height of six or seven stories.
[5] Section 47-33 also provided: "The planning and zoning board, subject to the considerations set out above, may require a minimum setback of twenty (20) feet from all property lines for [residential buildings]." All parties have interpreted this language as applying only if the property owner is seeking approval for additional dwelling units over and above the density permitted by the applicable zoning regulations ("density bonus"). While it seems clear to us that the language is not so restricted but rather was intended to apply to all residential property in the CBD, consistent with the provisions of section 47-33 as they existed prior to the 1985 rewording, we do not make that holding since the construction of this language has not been made an issue in any of the three petitions.
[6] Except for the street setback as provided in section 47-33.1(a), and then only for the first ten feet in height.
[7] Buntrock appears to have taken the position before the BOA and in the circuit court that setbacks and minimum yard restrictions are interchangeable terms. Buntrock argues here that they are not the same, and that there is nothing in section 47-33.1 which conflicts with (and thereby supersedes) the 3 minimum yard requirements. Aside from the fact that Buntrock may not take a position here inconsistent with the position taken before the lower tribunal, we find that notwithstanding the technical distinction made between "setbacks" and "yards," they are the same for all practical purposes.
[8] The City suggests in its response that by viewing this as clerical or scrivener's misprision which should have been written as 47-33.1(a), the resulting clause would bring all parts of the ordinance into harmony with the legislative intent. We agree it should be so viewed.
[9] Even without the linkage between section 47-33.1(a)(4) and section 47-59, the latter would apply independently for projects located in the CBD.
[10] In making this finding, the court was apparently speaking only of the front setback which did conform to the minimum front setback stated in the ordinance; the setbacks on the other sides are not specified by ordinance and are in the power of the Planning and Zoning Board to accept or reject, applying criteria set forth in the ordinances.
[11] Apparently this was in reference to the court's understanding that the City did not inform LOT of the setback requirements it would impose, but allowed the developer to revise its plan twice before informing it merely that the plans did not conform to the code requirements.